OPINION OF THE COURT
Helen E. Freedman, J.
Petitioner brings a summary. proceeding against respondent Vizzini for nonpayment of rent for the months of June and July, 1979. The petition was amended on consent to include rent for August of 1979. Respondent Vizzini is a rent-con *764 trolled tenant in a studio apartment at 214 East 15th Street where he has lived since 1970.
On four separate occasions, Mr. Vizzini has suffered serious damage to his apartment as a result of water "cascading” in from the apartment above. The same tenant has been living in the upstairs apartment and has been responsible for the flooding. The first incident occurred in tenant’s bathroom in 1973. The second incident occurred about four months later in the kitchen area, in and near many of the electrical outlets for the apartment. Landlord painted and made the necessary repairs each time.
In September, 1978, another flood occurred in the kitchen, also affecting the electrical outlets and requiring painting. The fourth flood occurred in May of 1979 and caused large cracks in tenant’s ceiling and walls.
Although the landlord made repairs and painted the apartment after the various incidents, there is no question that the tenant suffered substantial inconvenience and damage. Electrical outlets were unusable for a period, shelves had to be removed from walls, and goods had to be packed and stored during the painting. Repairs could not be made until walls and outlets had dried. The tenant also sustained damage to his personal belongings requiring cleaning and drying, and incurred expenses when he undertook to have his floors scraped. After the third incident, tenant claims that he requested that the landlord’s agent institute proceedings to remove the upstairs tenant and that he had been promised that such action would be commenced. No action was taken.
Respondent Vizzini now asserts a defense of breach of the warranty of habitability and of the statutory and lease covenants warranting quiet enjoyment of his premises. The court is faced with the issue of whether a landlord can be held liable for the aberrant behavior and harmful acts of other tenants.
In the leading case of Park West Mgt. Corp. v Mitchell (47 NY2d 316), in which there is a detailed discussion of the development of the warranty of habitability, the court found that section 235-b of the Real Property Law imposes an unqualified obligation on the landlord. The landlord warrants that both the demised premises and the areas within the landlord’s control are fit for human habitation throughout the period of the lease. With respect to dangerous conditions caused by other parties, the language of the opinion is instruc *765 tive (p 327): "However, as the statute places an unqualified obligation on the landlord to keep the premises habitable, conditions occasioned by ordinary deterioration, work stoppages by employees, acts of third parties or natural disaster are within the scope of the warranty as well * * *. Inasmuch as the landlord is vested with ultimate control and responsibility for the building, it is he who has a corresponding nondelegable and nonwaivable duty to maintain it.” (Emphasis added.)
The Court of Appeals has placed the responsibility for maintaining the premises in a safe habitable condition on the landlord, even where the unsafe condition may have been brought about by the acts of third parties. While the court may not be able to compel the landlord to institute eviction proceedings against the offending tenant, the landlord’s failure to take steps to eliminate the condition may constitute a breach of the warranty of habitability, justifying an abatement. (Kalikow Props. v Modny, NYLJ, May 2, 1978, p 5, col 1.)
Indeed, the instant case bears a striking resemblance to Kalikow. There, excessive and continuous noise by a neighbor was found to be harmful and to render an apartment uninhabitable. The Appellate Term affirmed the Housing Court’s holding that the landlord’s failure to restrain a tenant from creating noise, or to enforce a lease provision requiring that apartments be carpeted, was a breach of the warranty of habitability entitling the complaining tenant to a 30% abatement.
Here, the conditions that existed following at least two of the floods clearly rendered respondent’s apartment hazardous and partially uninhabitable. The landlord’s agent did not come forth with any evidence that they had made strong efforts to admonish or warn the upstairs tenant until after the fourth flood and after respondent Vizzini set forth his intention to force the landlord into court by withholding rent.
The court finds that by allowing the condition to persist, the landlord breached the warranty of habitability. The difficulty in ascertaining specific damage does not insulate the landlord from liability. (See Park West, supra.) Reduction in the value of the premises has been used as the standard of measurement. The court believes that respondent has satisfactorily proved that for at least two weeks after each of the two recent floods he sustained a 50% loss in the value of his apartment. *766 He is therefore entitled to an abatement in the amount of one half of one month’s rent, or $78.31.
Judgment for petitioner in the amount of $391.55. Legal fees denied. Ten days’ stay.